State v. Williams

STATE OF NORTH CAROLINA v. RANDY DALE WILLIAMS

No. 8326SC1133

(Filed 19 June 1984)

**1. Criminal Law § 66.9— photographic lineup—no impermissible suggestion**

Although defendant succeeded in highlighting many differences between the other subjects and himself in a photographic lineup, cumulatively they did not compel a conclusion that the photographic lineup, as a whole, was impermissibly suggestive.

**2. Criminal Law § 66.1— in-court identification—properly admitted**

In a prosecution for robbery, the trial court did not err in allowing a clerk to identify defendant in open court as the person who perpetrated the robbery where the witness had a few minutes to view defendant at extremely close range in a well-lighted area, testified that he paid close attention during the robbery, and identified defendant positively and without equivocation.

**3. Criminal Law § 62— defendant's desire to take polygraph examination—not competent evidence**

A trial court properly excluded on cross-examination questions designed to put before the jury the fact that the officer examined had refused a request to have defendant take a polygraph examination.

**4. Criminal Law § 99.2— remark by trial judge—no prejudicial error**

A remark by the trial judge upon sustaining an objection to defendant's attempt to introduce evidence regarding a requested polygraph exam that "you know better than that" did not reflect on the credibility of the witness or the weight of the evidence and was not prejudicial error.

**5. Criminal Law § 169.7— exclusion of evidence—error—cured by introduction of similar evidence**

The trial court erred in excluding testimony which was offered to show that an investigating officer, to whom defendant had relayed information, knew of the existence of another man resembling defendant who had been implicated in the armed robbery. However, no prejudicial error occurred since defendant testified to the substance of the statements and to his subsequent conversations with the officer and since the jury had a chance to view the other person who was brought into court, and saw a photograph of the other person.

**6. Criminal Law § 99— bench conference—informing defense counsel of intention to issue bench warrants for perjury against both defendant and his fiancee—no denial of right to present evidence with effective assistance of counsel**

A trial judge did not commit prejudicial error by informing defense counsel that he intended to issue bench warrants for perjury against both defendant and his fiancee because of apparent inconsistencies between their trial testimony and testimony at the *voir dire* on defendant's motions to suppress since the witnesses had presented the substance of their direct

testimony before the conference occurred, and since nothing in the record suggests that the jury discovered the threatened perjury prosecution. Further, defendant suggested no specific evidence he might have offered but for the judge's remarks.

APPEAL by defendant from *Howell, Judge.* Judgment entered 9 June 1983 in Superior Court, BUNCOMBE County. Heard in the Court of Appeals 9 May 1984.

*Attorney General Edmisten, by Assistant Attorney General Thomas G. Meacham, Jr., for the State.*

*Arthur E. Jacobson for defendant appellant.*

BECTON, Judge.

Based chiefly on the only eyewitness' testimony, defendant was convicted of armed robbery. On his appeal, we find no error.

I

A man brandishing a rifle held up a convenience store during the early morning of 1 February 1983; the store clerk was the only other person in the store. For approximately two minutes, the robber held the clerk at gunpoint in a well-lighted store, while emptying the cash register of $78.00, and then ran off. The clerk immediately called the police and, the next morning, helped them prepare a composite drawing. He could not identify the robber from the police mug books, which, however, did not contain any pictures of defendant. Based on the clerk's description, the composite drawing, his familiarity with the crime area, and discussions with informants, the investigating officer suspected defendant and compiled a photographic line-up of six white males, including defendant. He showed the line-up to the clerk one week after the robbery. The clerk positively identified defendant as the robber. Police brought defendant in, and included him in a line-up; the clerk again selected defendant. Defendant was then arrested. At trial, the State's inculpatory evidence consisted of the clerk's testimony and clothes, found at defendant's home, which matched the robber's. Defendant relied on alibi and good character evidence. The jury found him guilty of armed robbery.

## II

[1]   Defendant moved to suppress all evidence of the clerk's out-of-court identification based on the photographic line-up. Such evidence will only be excluded, however, when the facts reveal that the identification procedure was so impermissibly suggestive that there is a very substantial likelihood of irreparable misidentification. *Simmons v. United States*, 390 U.S. 377, 19 L.Ed. 2d 1247, 88 S.Ct. 967 (1968); *State v. Harris*, 308 N.C. 159, 301 S.E. 2d 91 (1983).

The factors to be considered in evaluating the likelihood of irreparable misidentification are well established. *See Harris; State v. Knight*, 282 N.C. 220, 192 S.E. 2d 283 (1972). Defendant focuses his attack on one factor—how the identification was conducted. He argues that the line-up was impermissibly suggestive because the other five photographs were dissimilar from his own in various ways. Unfortunately, defendant did not include the photographs as an exhibit to the record, so we must rely on the investigative officer's testimony concerning the individual photographs. His testimony indicates that he chose the other five photographs primarily based on similar hair and facial shape as well as race. Defendant succeeded in highlighting many differences between the other subjects and himself, but cumulatively they do not compel a conclusion that the photographic line-up, as a whole, was impermissibly suggestive. The human physiognomy necessarily differs from individual to individual, and fashions of hair style and facial hair create additional variations. Defendant, by cataloguing these inevitable variations in the six photographs employed, thus does not go far toward a showing of impermissible suggestion. As our Supreme Court, in language equally applicable here, has held concerning a group photograph:

> Due process of law does not require that all participants in a lineup or in a photograph, viewed by the victim of or witness to a crime, be identical in appearance, for that would, obviously, be impossible. All that is required is that the lineup or photograph be fair and that the officers conducting the investigation do nothing to induce the witness to select one participant or subject rather than another.

*State v. Montgomery*, 291 N.C. 91, 100, 229 S.E. 2d 572, 579 (1976). No evidence of improper inducement appears, and the officer tes-

State v. Williams

tified that the other individuals were similar in many respects to defendant, although admitting the obvious differences. We are satisfied on this record that the trial court did not err in finding that the line-up was sufficiently fair and not impermissibly suggestive.

Further, examination of the other relevant factors supports our conclusion that a very substantial risk of irreparable misidentification has not been shown. The witness observed defendant carefully and at close range in a well-lighted area, identified him immediately and positively when shown the photographs a week after the robbery, and had not identified any other person or failed to identify defendant at any other time. The court did not err in allowing evidence of the out-of-court identification. *See Harris.*

### III

[2]   Defendant next contends that the trial court erred by allowing the clerk to identify him in open court. Again, *Harris* supplies the rule of decision. Applying the factors enumerated therein to the circumstances of this case as discussed above, we find no error. The witness had a few minutes to view defendant at extremely close range in a well-lighted area, and testified that he paid close attention during the robbery. He identified defendant positively and without equivocation. In light of this evidence and the other circumstances, we hold that the trial court did not err in allowing the in-court identification based on observation at the time of the robbery.

### IV

[3]   During cross-examination of the investigating officer, the trial court excluded cross-examination questions designed to put before the jury the fact that the officer had refused a request to have defendant take a polygraph examination. On identical facts we have previously held that such questions are properly excluded. *State v. Makerson,* 52 N.C. App. 149, 277 S.E. 2d 869 (1981). In *Makerson* we held that since the results of polygraph tests were inadmissible except by stipulation, defendant's willingness to take one absent such stipulation was "simply not competent evidence." The *Makerson* Court held:

We subscribe to a strict enforcement of the general principle that all references to these tests should be kept from the hearing of the jury. If the results of the test are not competent evidence, then references to the tests are not relevant and should be held inadmissible, as was done in this case.

52 N.C. App. at 153, 277 S.E. 2d at 872. The subsequent decision of our Supreme Court in *State v. Grier*, 307 N.C. 628, 300 S.E. 2d 351 (1983), establishing a blanket rule against admissibility of polygraph evidence in *any* trial, confirms and reinforces *Makerson*. This assignment is therefore without merit.

V

[4] When defendant attempted to introduce evidence regarding the requested polygraph exam, the trial court sustained the State's objection and told defense counsel, "You know better than that." Defendant alleges error. We have reviewed the record carefully and this statement constitutes the only such remark by the trial judge. The statement does not reflect on the credibility of the witness or the weight of the evidence; rather it followed a correct legal ruling excluding evidence rendered highly suspect by recent and well-publicized decisions of our Supreme Court. We find no prejudicial error. *See State v. Greene*, 285 N.C. 482, 206 S.E. 2d 229 (1974) (no error when judge told the defendant "you don't have to talk like that").

VI

[5] Defendant next contends that the trial court erred in sustaining objections to questions asked of him on direct examination concerning conversations he had overheard in the jailhouse, when the testimony was not being offered to prove the truth of the matter stated. The proffered testimony consisted of statements by defendant's fellow prisoners which tended to implicate another man resembling defendant in the armed robbery. The defendant's testimony was offered to show that the investigating officer, to whom defendant relayed the information, knew of the existence of this other person. For this purpose, his testimony should have been admitted. *See* 1 H. Brandis, *North Carolina Evidence* § 141 (2d rev. ed. 1982). Nevertheless, no prejudicial error occurred, since defendant testified to the substance of the statements and to his subsequent conversations with the officer. Moreover, the

jury saw the defendant and the other person together when the other person was brought into court, and saw a photograph of the other person. It is well established that when evidence of similar import to improperly excluded evidence comes in at other times, the exclusion does not constitute prejudicial error. *State v. Smith,* 294 N.C. 365, 241 S.E. 2d 674 (1978); *State v. Gray,* 268 N.C. 69, 150 S.E. 2d 1 (1966), *cert. denied,* 386 U.S. 911, 17 L.Ed. 2d 784, 87 S.Ct. 860 (1967).

## VII

[6] Defendant's fiancee testified for him, presenting evidence of alibi. Defendant later took the stand in his own behalf and testified on direct examination about his reduced financial circumstances, his alibi defense, and various other matters. After apparently "summing up" with a question about whether defendant would ever be inclined to commit armed robbery, defense counsel approached the bench where an off-the-record colloquy took place. Afterwards, defense counsel indicated that he had no further questions.

During the conference at the bench, the trial judge informed defense counsel that he intended to issue bench warrants for perjury against both defendant and his fiancee because of apparent inconsistencies between their trial testimony and testimony at the *voir dire* on defendant's motions to suppress. Relying on *State v. Rhodes,* 290 N.C. 16, 224 S.E. 2d 631 (1976), defendant claims prejudicial error and denial of his right to present his evidence with the effective assistance of counsel.

We believe that both *Rhodes* and the recent decision in *State v. Locklear,* 309 N.C. 428, 306 S.E. 2d 774 (1983), are distinguishable from the case *sub judice.* In *Rhodes,* the trial judge made "extensive, accusatory, and threatening" comments, including threats of prosecution for perjury, to one of the principal defense witnesses. The judge's comments resulted in the defense abandoning its examination, although the witness had not yet presented her version of the allegedly criminal events, and although this left a devastating prior statement unexplained. Writing for a unanimous court, Chief Justice Sharp held that the judge had improperly projected himself into the case and thereby altered defense counsel's trial strategy.

In *Locklear*, the trial judge repeatedly admonished a recalcitrant witness, out of the presence of the jury, concerning the penalties for perjury and failure to answer. The witness then changed her testimony and incriminated the defendant. The Supreme Court, following *Rhodes*, ordered a new trial. In both *Rhodes* and *Locklear* the defense had not finished examining the witness. Both cases relied on *Webb v. Texas*, 409 U.S. 95, 34 L.Ed. 2d 330, 93 S.Ct. 351 (1972) (per curiam) (judge effectively drove witness off the stand before he testified; new trial).

By contrast, the witnesses here had presented the substance of their direct testimony. Defense counsel apparently was asking general concluding questions when the threats took place. Nothing in the record suggests that the jury discovered the threatened perjury prosecution. *Cf. State v. Simpson*, 233 N.C. 438, 64 S.E. 2d 568 (1951) (witnesses arrested for perjury during trial); *State v. Swink*, 151 N.C. 726, 66 S.E. 448 (1909) (similar facts). Defendant suggests no specific evidence he might have offered but for the judge's remarks. None of the questions on the subsequent cross-examination required answers which might have been affected by the judge's remarks. We therefore hold that defendant has shown no prejudicial error.

Defendant also contends under this assignment that the court improperly refused to allow him to delay his offer of proof of the statements by defendant's fellow prisoners discussed earlier, and that this refusal constituted further evidence of failure of judicial impartiality. The offer of proof contained no new evidence, however, but merely detailed the statements whose substance was already before the jury. Presumably, the judge was aware of this and the questions to which objection had been sustained. We do not discern any abuse of discretion in the court's refusal to delay the offer to the next day.

Perjury is not readily apparent when we compare trial and *voir dire* testimony. Prosecution for perjury is not a matter to be bandied about or treated lightly, and caution in suggesting or threatening prosecution is, therefore, appropriate. Nevertheless, as discussed above, no prejudicial error occurred.

## VIII

The mandatory and presumptive sentence for armed robbery is fourteen years, while the maximum sentence is forty years.

N.C. Gen. Stat. §§ 14-1.1, -87 (1981). The trial court found in aggravation that defendant had three prior convictions for felony larceny in 1975, all while being represented by counsel. In mitigation, the court found that defendant had been a person of good character or reputation in the community. Nevertheless, it found that the aggravating factors outweighed the mitigating factors and sentenced defendant to 25 years in prison. Defendant does not challenge the sufficiency of the evidence or the application of the law. The sentence was within the discretion of the trial court. *State v. Ahearn,* 307 N.C. 584, 300 S.E. 2d 689 (1983). The weight to be given the various factors found, and the degree to which they justify deviating from the presumptive sentence, also lie within the discretion of the trial judge, who hears the evidence and observes the demeanor of the witnesses. *Id.* Defendant's contention that the sentence imposed is extremely disproportionate to the effect the eight-year-old convictions *should* have had is accordingly without merit and the sentence is affirmed.

IX

We conclude that defendant received a fair trial, free from prejudicial error, and that the sentence imposed upon his conviction was proper.

No error.

Judges WELLS and JOHNSON concur.