STATE OF NORTH CAROLINA v. ERVIN JUNIOR DUNSTON

No. 8710SC1076

(Filed 5 July 1988)

**1. Rape and Allied Offenses § 5— attempted second degree rape—sufficiency of evidence**

Evidence that defendant was playing with his pants zipper prior to an attack and that during the attack he fumbled with the victim's shorts and then began rubbing her crotch was sufficient evidence of overt sexual behavior from which the jury could properly infer, notwithstanding the possibility of other inferences, that defendant intended to engage in vaginal intercourse with his victim, and evidence that defendant grabbed the victim from behind, dragged her several feet, forced her to the ground, covered her mouth with his hand, proceeded to fondle her without her consent, and stopped only when she kicked him in the groin was ample to support an inference that defendant, at some point during the attack, intended forcibly to rape the victim despite her resistance; therefore, the trial court properly denied defendant's motion to dismiss the charge of attempted second degree rape made on the ground that the evidence was insufficient as a matter of law.

**2. Criminal Law § 66.9— photographic lineup—no suggestive procedure**

Pretrial identification procedures were not unnecessarily suggestive where defendant was the only person in a photographic lineup portrayed wearing khaki slacks thereby matching the description given by the victim of her assailant, since the seven individuals depicted were of reasonably similar appearance; the victim was not improperly induced to choose one subject over another; and the victim was unable positively to identify defendant from the photographic lineup. Moreover, her identification of defendant's car was not improper where she selected the car from a large array of automobiles without prompting or other inducement by police officers, and she recognized the car from her observations on the day of the incident.

**3. Criminal Law § 66.16— in-court identification of defendant—independent origin**

An attempted rape victim's in-court identification of defendant was admissible, regardless of the validity of a pretrial identification, where the victim testified that the attack occurred in bright daylight; she observed defendant attentively face-to-face, without obstruction, as he leaned over her within sixteen inches of her face; she accurately described defendant immediately after the attack and at trial; she testified that her identification was based on her memory of the incident; and the identification was thus of independent origin and untainted by any pretrial events.

APPEAL by defendant from *B. Craig Ellis, Judge*. Judgments entered 1 May 1987 in Superior Court, WAKE County. Heard in the Court of Appeals 31 March 1988.

*Attorney General Lacy H. Thornburg, by Associate Attorney General Kim L. Cramer and Assistant Attorney General Doris J. Holton, for the State.*

*John T. Hall for defendant-appellant.*

BECTON, Judge.

Defendant, Ervin Junior Dunston, was convicted of attempted second degree rape and taking indecent liberties with a minor. From judgments sentencing him to two consecutive three-year prison terms, defendant appeals, seeking reversal of the attempted rape conviction for insufficiency of the evidence and a new trial on the indecent liberties charge for alleged errors in the admission of evidence. We find no error.

I

The State's evidence at trial showed that, at approximately 8:30 a.m. on 5 August 1986, Jaymie Atkins, age 14, was walking from her home in Raleigh to summer soccer camp at Ravenscroft School. She was wearing a tee-shirt with soccer shorts which fastened with snaps, a zipper, and tie strings. As she travelled along the right side of Newton Road toward the back entrance of the school, a loud mustard-colored car passed her and turned into the entrance. When Jaymie reached the entrance, she walked past the car which was parked just inside the gate with the hood raised. A rather tall, bearded black man of medium build, dressed in khaki pants and plaid shirt, stood by the car playing with his pants zipper.

The car started up, passed Jaymie going toward the school, and disappeared from sight around a curve. Soon the car drove by again, headed out of the school, but reversed and backed up alongside Jaymie as she was walking. The man she previously had seen standing by the car was driving. Then the man drove on toward the entrance.

In a few moments, Jaymie heard the car again. Then suddenly someone grabbed her around the neck from behind, dragged her a few feet to the edge of the woods, and pushed her down on her back. She was screaming, and her assailant leaned over her and placed one hand over her mouth. With his other hand, he fumbled with her pants for a second, then moved his hand down and

began rubbing her crotch. Jaymie kicked the man in the groin area, and he suddenly jumped up and ran to his car. As he drove away, his victim memorized the license plate number as HAX 721 or HAX 727.

By tracing the license plate number, the police located a vehicle matching Jaymie's description at a residence in Franklinton where they photographed the car and the defendant. On the afternoon of the attack, Jaymie viewed a photographic line-up but could not identify the man who attacked her. Later the same day, she viewed a second photographic line-up, this one containing the picture of the defendant. She eliminated six of the seven pictures, and stated that picture number six (the defendant) "could be him" but she was not sure. The following day, Jaymie accompanied police officers to a parking lot containing 250-300 cars where she identified a vehicle as the one driven by her assailant. The car was registered to defendant and bore the license number HAX 721.

Jaymie first positively identified defendant at the preliminary hearing, where she recognized him among a group of prisoners coming into the courtroom and pointed him out to her mother and stepfather. She also identified defendant at trial as her attacker.

II

[1] Defendant first contends that the trial court erred by denying his motion to dismiss the charge of attempted second degree rape because the evidence was insufficient as a matter of law to establish his intent to commit rape. We disagree. In ruling upon a motion to dismiss in a criminal prosecution, the trial court must view the evidence in the light most favorable to the State, giving the State the benefit of every reasonable inference to be drawn from the evidence. *E.g., State v. Earnhardt*, 307 N.C. 62, 296 S.E. 2d 649 (1982). If there is substantial evidence of each element of the offense charged and that the defendant is the perpetrator, the motion is properly denied. *E.g., State v. Powell*, 299 N.C. 95, 261 S.E. 2d 114 (1980).

In order to convict a defendant of attempted rape under N.C. Gen. Stat. Sec. 14-27.6 (1986), the State must prove two essential elements beyond a reasonable doubt — that the accused had the

specific intent to commit rape and that he committed an overt act for that purpose which goes beyond mere preparation but falls short of the completed offense. *State v. Bell,* 311 N.C. 131, 140, 316 S.E. 2d 611, 616 (1984); *State v. Boone,* 307 N.C. 198, 210, 297 S.E. 2d 585, 592 (1982). The element of intent is established if the evidence shows that the defendant, at any time during the incident, had an intent to gratify his passion upon the victim notwithstanding any resistance on her part. *E.g., State v. Moser,* 74 N.C. App. 216, 328 S.E. 2d 315 (1985). The State need not show that the defendant made an actual physical attempt to have intercourse or that he retained the intent to rape his victim throughout the incident. *State v. Hudson,* 280 N.C. 74, 77, 185 S.E. 2d 189, 191 (1971), *cert. denied,* 414 U.S. 1160, 39 L.Ed. 2d 112 (1974).

Defendant maintains the State failed to prove a specific intent to have vaginal intercourse with the victim because the evidence presented is equally consistent with an intent to merely look at the victim or commit some other sexual offense. However, there is substantial precedent from our courts establishing that some overt act manifesting a sexual purpose or motivation on the part of the defendant is adequate evidence of an intent to commit rape. *See, e.g., State v. Whitaker,* 316 N.C. 515, 342 S.E. 2d 514 (1986) (defendant verbally expressed desire to perform cunnilingus with his victim and told her to pull down her pants); *State v. Bell* (defendant discussed with his brother "getting some sex," took their two victims to a secluded area, and ordered them to remove their clothes); *State v. Schultz,* 88 N.C. App. 197, 362 S.E. 2d 853 (1987) (defendant touched victim's breast); *State v. Hall,* 85 N.C. App. 447, 355 S.E. 2d 250, *disc. rev. denied,* 320 N.C. 515, 358 S.E. 2d 525 (1987) (defendant pulled the victim's shirt down and touched her breasts); *State v. Wortham,* 80 N.C. App. 54, 341 S.E. 2d 76 (1986), *rev'd in part on other grounds,* 318 N.C. 669, 351 S.E. 2d 294 (1987) (defendant slit open the crotch of his sleeping victim's panties); *State v. Powell,* 74 N.C. App. 584, 328 S.E. 2d 613 (1985) (defendant entered victim's bedroom at night, undressed, and began fondling his genitalia). Moreover, both our Supreme Court and this court have specifically rejected arguments similar to that made by defendant, holding that evidence an attack is sexually motivated will support a reasonable inference of an intent to engage in vaginal intercourse with the vic-

---

---

tim even though other inferences are also possible. *See State v. Whitaker; State v. Hudson; State v. Schultz; State v. Hall.*

In the present case, there is evidence the defendant was playing with his pants zipper prior to the attack and that during the attack he fumbled with the victim's shorts and then began rubbing her crotch. In light of the foregoing precedent,. we hold that this constitutes sufficient evidence of overt sexual behavior from which the jury could properly infer, notwithstanding the possibility of other inferences, that defendant intended to engage in vaginal intercourse with his victim.

Defendant further contends, without discussion, that the evidence failed to show he intended or threatened to use force sufficient to overcome any resistance his victim might assert. This argument is also without merit. The evidence shows that defendant grabbed the victim from behind; dragged her several feet; forced her to the ground, covering her mouth with his hand; and proceeded to fondle her without her consent, desisting only after she kicked his groin area. In our view, this is ample evidence to support an inference that defendant, at some point during the attack, intended to forcibly rape the victim despite her resistance.

This assignment of error is overruled.

### III

Defendant next argues that the trial court erred by admitting Jaymie Atkins' in-court identification of defendant and evidence of her pretrial identification of him and that he is entitled to a new trial at which this evidence is excluded.

Identification evidence must be suppressed on due process grounds only whenever, under all the circumstances of the case, the pretrial identification procedure was so impermissibly suggestive as to create a very substantial likelihood of irreparable misidentification. *E.g., State v. Wilson,* 313 N.C. 516, 528-29, 330 S.E. 2d 450, 459 (1985). Even when a pretrial procedure is impermissibly suggestive, an in-court identification is admissible if found to be of independent origin and, thus, not tainted by the previous invalid procedure. *E.g., State v. Clark,* 301 N.C. 176, 183, 270 S.E. 2d 425, 429 (1980).

Before the trial court admitted the identification evidence in the present case, an extensive *voir dire* was conducted concerning both the in-court and out-of-court identification of defendant. After hearing testimony of the victim, her stepfather, and the investigating officer, and observing the seven photographs composing the photographic line-up, the court made numerous findings of fact and concluded that the pretrial identification procedures were not impermissibly suggestive. He further ruled that the in-court identification was of independent origin based upon the victim's direct observations during the attack. Our review of the record convinces us that the court's findings and conclusions are supported by substantial competent evidence and are thus binding on appeal. *See, e.g., State v. White,* 307 N.C. 42, 296 S.E. 2d 267 (1982).

[2] We first consider the validity of the pretrial identification procedure. Defendant specifically challenges each step of the pretrial identification and maintains that the combination of events gives rise to a substantial likelihood of irreparable misidentification. He first contends that the photographic line-up containing his picture was impermissibly suggestive because he was the only person portrayed wearing khaki slacks and thereby matching the description given by the victim of her assailant. However, a photographic line-up is not impermissibly suggestive merely because the defendant is the only individual photographed wearing a particular item of clothing matching a witness's description. *See, e.g., State v. Ricks,* 308 N.C. 522, 302 S.E. 2d 770 (1983); *State v. White; State v. Thompson,* 303 N.C. 169, 277 S.E. 2d 431 (1981). All that is required is that the line-up be fair and that the officers conducting it do nothing to induce the witness to select one picture rather than another. *State v. Grimes,* 309 N.C. 606, 610, 308 S.E. 2d 293, 295 (1983). Although we do not have the photographs before us on appeal, the *voir dire* testimony and the trial court's findings indicate that the seven individuals depicted were of reasonably similar appearance and that the victim was not improperly induced to choose one subject over another. Moreover, the very fact that the victim was unable to positively identify defendant from the photographic line-up belies his assertion that the procedure was impermissibly suggestive. *See State v. Ricks,* 308 N.C. at 526-27, 302 S.E. 2d at 772.

Defendant also attacks the validity of the identification of his vehicle and then argues that the combination of the photographic line-up and the vehicle identification procedure somehow impermissibly predisposed the victim to identify him at the preliminary hearing. These contentions are without merit. The evidence shows that the victim selected the defendant's car from a large array of automobiles without prompting or other inducement by police officers and that she recognized the car from her observations on the day of the incident. Similarly, the *voir dire* evidence concerning her first positive identification of defendant at the preliminary hearing indicates she recognized and identified him spontaneously and without improper suggestion or inducement.

We find no evidence in the record of any additional circumstances regarding defendant's pretrial identification which are conducive to an irreparable mistaken identification. For the foregoing reasons, we hold that the pretrial procedures were not unnecessarily suggestive and that, consequently, evidence concerning the pretrial identification of defendant was properly admitted.

[3] We also find adequate support for the trial court's determination that the in-court identification was admissible, regardless of the validity of the pretrial identification, because it was of independent origin based upon the victim's observations at the time of the incident. Jaymie's testimony on *voir dire* and at trial indicates that during the attack, which occurred in bright daylight, she observed defendant attentively face-to-face, without obstruction, as he leaned over her within sixteen inches of her face. She accurately described the defendant immediately after the attack and at trial. Further, she testified that her identification was based on her memory of the incident. From this evidence, we conclude the in-court identification was fair and untainted by any pretrial events. *See State v. Osborne*, 83 N.C. App. 498, 350 S.E. 2d 909 (1986).

In addition to the foregoing arguments, defendant also challenges the admission of the identification evidence on the basis of alleged errors in the conduct of the *voir dire* hearing. These contentions merit no discussion and are overruled.

IV

Defendant's remaining arguments relate to other alleged errors of the trial court in the admission of evidence. Having carefully reviewed these contentions, we conclude that they are without merit.

Defendant received a fair trial, free of prejudicial error.

No error.

Judges JOHNSON and GREENE concur.